IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GENEVA HENDERSON, *et al*.,

                        *Plaintiffs*,

 v.                                              No. 1:16-cv-2920-CAP

EMORY UNIVERSITY, *et al*.,

                        *Defendants*.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

# CONTENTS

Introduction.................................................................................................1

Background .................................................................................................2

I.   Parties and the Plans. ...........................................................................2

II.  Plaintiffs' claims .................................................................................5

    A.  Locking the Plans into TIAA-CREF investment options and
        TIAA Recordkeeping (Counts I, II) .......................................6

    B.  Excessive Recordkeeping and Administrative Fees (Counts III,
        IV).............................................................................................6

    C.  Excessive investment management fees and imprudent
        investments (Counts V, VI)......................................................8

III. The proposed class definition. ..............................................................9

Argument ...................................................................................................10

I.   The proposed class is ascertainable. .....................................................11

II.  Plaintiffs satisfy Rule 23(a). ...............................................................12

    A.  Numerosity ...............................................................................12

    B.  Commonality ............................................................................13

    C.  Typicality..................................................................................15

    D.  Adequacy ..................................................................................17

III. Plaintiffs meet the requirements of Rule 23(b)(1).......................................21

Conclusion ................................................................................................25

i

# AUTHORITIES

## Cases

*Abbott v. Lockheed Martin Corp.*,
   286 F.R.D. 388 (S.D. Ill. 2012)..............................................................................23

*Abbott v. Lockheed Martin Corp.*,
   No. 06-701, 2015 U.S.Dist.Lexis 93206 (S.D. Ill. July 17, 2015) ............... 22, 23

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..............................................................................................19

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
   133 S. Ct. 1184 (2013) .................................................................................. 11, 12

*Ault v. Walt Disney World Co.*,
   692 F.3d 1212 (11th Cir. 2012) ............................................................................17

*Beesley v. Int'l Paper Co.*,
   No. 06-703, Doc. 240 (S.D. Ill. Sept. 30, 2008), *vacated on other
   grounds*, 633 F.3d 574 (7th Cir. 2011) ................................................................23

*Belton v. Georgia*,
   No. 10-583, 2011 U.S.Dist.Lexis 25454 (N.D. Ga. Mar. 14, 2011)....................17

*Buford v. H&R Block, Inc.*,
   168 F.R.D. 340 (S.D. Ga. 1996) ...........................................................................12

*Bussey v. Macon Cty. Greyhound Park, Inc.*,
   562 Fed. App'x 782 (11th Cir. 2014) ...................................................................12

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) ............................................................................13

*Curriuolo v. GM Co.*,
   823 F.3d 977 (11th Cir. 2016) ..............................................................................11

*Dewey v. Volkswagen Aktiengesellschaft*,
   681 F.3d 170 (3d Cir. 2012)..................................................................................19

*Fuller v. Suntrust Banks, Inc.*,
  744 F.3d 685 (11th Cir. 2014) ...............................................................................1

*Gen Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ...............................................................................14

*George v. Kraft Foods Global Inc.*,
  251 F.R.D. 338 (N.D. Ill. 2008) ...............................................................................23

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ...............................................................................20

*In re Delta/Air Tran Baggage Fee Antitrust Litig.*,
  317 F.R.D. 675 (N.D. Ga. 2016) ............................................................... 12, 20

*In re Northrop Grumman Corp. ERISA Litig.*,
  No. 06-6213, 2011 U.S.Dist.Lexis 94451 (C.D. Cal. Mar. 29, 2011) ................23

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009)............................................................... 2, 14, 23, 26

*In re Suntrust Banks, Inc.*,
  No. 08-3384, 2016 U.S.Dist.Lexis 108916 (N.D. Ga. Aug. 17,
  2016)............................................................... 2, 13, 15, 17, 23

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) ............................................................... 16, 18, 23

*Karhu v. Vital Pharms., Inc.*,
  621 F. App'x 945 (11th Cir. 2015) ...............................................................................12

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ...............................................................................17

*Krueger v. Ameriprise Fin., Inc.*,
  304 F.R.D. 559 (D.Minn. 2014)............................................................... 16, 17, 19, 23, 26

*Little v. T-Mobile USA, Inc.*,
  691 F.3d 1302 (11th Cir. 2012) ...............................................................................11

*Loomis v. Exelon Corp.*,

No. 06-4900, 2007 U.S.Dist.Lexis 46893 (N.D. Ill. June 26, 2007) ..................23

*Mass Mut. Lif. Ins. Co. v. Russell*,
   473 U.S. 134 (1985)....................................................................................... 11, 19

*Mezyk v. U.S. Bank Pension Plan*,
   No. 09-384, 2011 U.S.Dist.Lexis 13857 (S.D. Ill. Feb. 11, 2011) .....................13

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ...........................................................................................26

*Piazza v. Ebsco Indus.*,
   273 F.3d 1341 (11th Cir. 2001).................................................. 13, 17, 19, 22, 26

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ........................................................................17

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ...........................................................................................27

*Spano v. Boeing Co.*,
   294 F.R.D. 114 (S.D. Ill. 2013).........................................................................23

*Stanford v. Foamex L.P.*,
   263 F.R.D. 156 (E.D. Pa. 2009) ........................................................................26

*Stargel v. Suntrust Banks, Inc.*,
   791 F.3d 1309 (11th Cir. 2015) ..........................................................................1

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966)...........................................................................................20

*Tatum v. R.J. Reynolds Tobacco Co.*,
   254 F.R.D. 59 (M.D.N.C. 2008) ........................................................... 18, 23, 26

*Taylor v. United Techs. Corp.*,
   No. 06-1494, 2008 U.S.Dist.Lexis 43655 (D. Conn. June 3, 2008)...................23

*Thorpe v. Walter Inv. Mgmt., Corp.*,
   No. 14-20880, 2016 U.S.Dist.Lexis 13857 (S.D. Fla. Mar. 16,
   2016).................................................................................................................12

*Tibble v. Edison Int'l*,
　135 S. Ct. 1823 (2015) ...................................................................7, 22

*Tibble v. Edison Int'l*,
　No. 07-5359, 2009 U.S.Dist.Lexis 120939  (C.D.Cal. June 30,
　2009), *aff'd*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other
　grounds*, 135 S.Ct. 1823 (2015) ................................................. 16, 26

*Tibble v. Edison Int'l*,
　No. 07-5359, 2009 U.S.Dist.Lexis 120939 (C.D. Cal. June 30,
　2009) .........................................................................................23

*Tussey v. ABB Inc.*,
　850 F.3d 951 (8th Cir. 2017) ...............................................................25

*Tussey v. ABB Inc.*,
　No. 06-4305, 2007 U.S.Dist.Lexis 88668 (W.D. Mo. Dec. 3, 2007) .................23

*Tussey v. ABB, Inc.*,
　No. 06-4305, 2012 U.S.Dist.Lexis 157428 (W.D. Mo. Nov. 2,
　2012) .........................................................................................22

*Tussey v. ABB, Inc.*,
　No. 06-4305, 2012 U.S.Dist.Lexis 45240 (W.D. Mo. Mar. 31,
　2012) .........................................................................................25

*Wal-Mart Stores, Inc., v. Dukes*,
　564 U.S. 338 (2011) ................................................................. 14, 18

*Williams v. Mohawk Indus.*,
　568 F.3d 1350 (11th Cir. 2009) ........................................................14

## Statutes

29 U.S.C. §1002(2)(A) ..........................................................................2

29 U.S.C. §1002(34) ............................................................................2

29 U.S.C. §1102(a) ..............................................................................3

29 U.S.C. §1103(a) ............................................................................24

29 U.S.C. §1103(c)(1) ................................................................8

29 U.S.C. §1104(a) ...................................................................1

29 U.S.C. §1104(a)(1) ........................................................ 15, 24

29 U.S.C. §1109(a) ......................................................... 1, 10, 19

29 U.S.C. §1132(a)(2) ..........................................................1, 10

**Rules**

Fed. R. Civ. P.23 ....................................................................11

Fed.Civ.P. 23(g) ....................................................................21

Fed.R.Civ.P. 23 .....................................................................26

Fed.R.Civ.P. 23(a)(1) ............................................................13

Fed.R.Civ.P. 23(a)(2) ............................................................14

Fed.R.Civ.P. 23(a)(4) ............................................................19

Fed.R.Civ.P. 23(b)(1)(B) .......................................................26

Fed.R.Civ.P.23(a)(3) .............................................................16

# INTRODUCTION

The Employee Retirement Income Security Act ("ERISA") imposes stringent duties upon fiduciaries of workplace retirement plans such as 401(k) plans—duties that "are 'the highest known to law.'" *Fuller v. Suntrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014);[1] *see* 29 U.S.C. §1104(a). Plaintiffs contend that Defendants, as fiduciaries of the Emory University Retirement Plan and the Emory Healthcare, Inc. Retirement Savings and Matching Plan ("Plans"),[2] breached their stringent duties and engaged in prohibited transactions by causing the Plans to pay excessive fees for administrative and investment management services and by providing imprudent Plan investments options, resulting in tens of millions of dollars in losses to the Plans. On behalf of a class of all the Plans' participants, Plaintiffs bring suit on behalf of the Plan under 29 U.S.C. §1132(a)(2) to obtain remedies due to the Plan under 29 U.S.C. §1109(a), including damages and equitable relief.

> In light of the derivative nature of ERISA §502(a)(2)[3] claims, breach of fiduciary duty claims brought under §502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.

---

[1] Abrogated on other grounds, as noted in *Stargel v. Suntrust Banks, Inc.*, 791 F.3d 1309, 1311 (11th Cir. 2015)(per curiam).

[2] Where referred to separately, The Emory University Retirement Plan is referred to as the "Retirement Plan" and the Emory Healthcare Inc. Retirement Savings and Matching Plan is referred to as the "Healthcare Plan."

[3] ERISA §502(a)(2) is codified at 29 U.S.C. §1132(a)(2). Plaintiffs generally refer to the U.S. Code section numbers.

*In re Suntrust Banks, Inc.*, No. 08-3384, 2016 U.S.Dist.Lexis 108916, *26 (N.D. Ga. Aug. 17, 2016)(Story, J.)(quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)(listing cases)). This case is no exception. The Court should certify this action as a class action under Federal Rule of Civil Procedure 23(b)(1)(A) or (B).

## BACKGROUND

### I.   Parties and the Plans.

The Plans are defined contribution, individual account, employee pension benefit plans under 29 U.S.C. §1002(2)(A) and §1002(34). Doc. 30 ¶¶9, 11. Each of the named Plaintiffs is a participant in one or both of the Plans. Doc. 30 ¶¶13–24; Answer, Doc. 68 ¶¶13–24; Plaintiffs' declarations, ¶1 of each. Each Plan is in the largest 0.1% of all defined contribution plans in the United States based on asset size. The Retirement Plan holds $2.6 billion in assets and had more than 22,000 in participants with account balances as of year-end 2015, and at least 10,000 participants throughout the time in the suit.[4] The Healthcare Plan holds $1.09 billion in assets and had more than 23,000 participants with account balances as of year-end 2015, and at least 10,000 participants throughout the time in suit.[5]

_____

[4] Soyars Decl. Ex. 1 (p.2, Line 6g), Ex. 2. (p.2, Line 6g), Ex. 3 (p.2, Line 6g), Ex. 4 (p. 2, Line 6g), Ex. 5 (p.2, Line 6g), Ex. 6 (p.2, Line 6g).
[5] Soyars Decl. Ex. 7 (p.2, Line 6g), Ex. 8. (p.2, Line 6g), Ex. 9 (p.2, Line 6g), Ex.

Defendants Emory University and Emory Healthcare, Inc. are the named fiduciaries of the Retirement Plan and Healthcare Plan, respectively, with responsibility and discretionary authority to control their Plans' operation, management, and administration.[6]

The Plans are subject to centralized management by the Emory Pension Board and Emory Investment Management. Per a charter created on June 22, 2004 by the Executive Committee of Emory University's Board of Trustees, Emory University established the Emory Pension Board. Ex. 15 at 1. Emory Pension Board is charged with fiduciary oversight and administration of the Plans, including responsibility for selecting administrators, and "[e]nsuring that the Plans are operated in a manner that is in the best interests of the Plans' participants and carrying out the fiduciary responsibility assigned to the Plan sponsors." *Id.* at 1–2.

The Investment Committee of Emory's Board of Trustees provides general investment oversight and establishes an investment policy for the Plans. Ex. 15. The Committee authorized the Emory University Investment Office, also known as Emory Investment Management, to implement those policies. Ex. 15. Pursuant to the authority granted to Emory Investment Management by the Committee, the

---

10 (p.2, Line 6g), Ex. 11 (p.2, Line 6g), Ex. 12 (p.2, Line 6g).

[6] Doc. 30 ¶¶25–26, 40–41; 29 U.S.C. §1102(a); Ex. 13 at §12.1, §12.2 (Retirement Plan document); Ex. 14 §1.20, §9.1 (Healthcare Plan document).

3

Emory Pension Board delegated to Emory Investment Management the responsibility to "select investment managers for the Plans; determine investment funds to be offered by the Plans; and monitor the investment performance of the Plans against stated objectives." Ex. 16 (Charter).[7] Because individual defendant liability does not affect certification of the proposed class, Plaintiffs refer to the defendants collectively as "Defendants" or "Emory" unless otherwise noted.

The Plans permit participants to designate investment options in which their individual accounts are invested. Ex. 13 at §7.1, §7.2 ; Ex. 14 §7.1, §7.2. The Retirement Plan and the Healthcare Plan offer virtually the same investment options based on Defendants' centralized management of Plan assets. Doc. 41-2 at 8–17, 23–28; 35–40;[8] Doc. 41-3 at 8–13, 23–28, 35–40. Emory Investment Management exercises exclusive discretionary authority and control over the investment options that are included in the Plans. Ex. 15 at 1–3, 6.  Both Plans have approximately 111 investment options from three vendors: TIAA, Fidelity, and Vanguard. Doc. 41-2 at 8–17, 23–28; 35–40; Doc. 41-3 at 8–13, 23–28, 35–40.

Each participant's account is based on the value of contributions and

_____

[7] The individual defendants include certain members of the Emory Pension Board. Doc. 30 ¶36.

[8] All page numbers refer to the ECF page number at the top of the page.

4

investment earnings, and is charged with an allocation of administrative expenses.[9] The Plans have three recordkeepers—TIAA, Vanguard, and Fidelity—that are paid mostly through asset-based revenue sharing received from the Plans' higher-cost, proprietary funds. *See* Exs. 1–12 (Schedule C of each 5500).

## II.    Plaintiffs' claims

On May 10, 2017, the Court largely denied the Defendants' motion to dismiss. Doc. 61. Plaintiffs' remaining fiduciary breach and prohibited transaction claims allege that Defendants breached their duties and committed prohibited transactions by (1) locking the Plans into TIAA-CREF products and services and allowing TIAA to require that it be used for providing the Plans' recordkeeping for its proprietary options (Counts I & II, Doc. 30 ¶¶247–258); (2) failing to monitor and control the Plans' recordkeeping fees or prudently consolidate the Plans' three recordkeepers (Counts III & IV, Doc. 30 ¶¶259–272); and (3) including high-cost, poor performing investments in the Plans (Counts V & VI, Doc. 30 ¶¶273–292).[10]

---

[9] Soyars Decl. Ex. 1 (p.7, Note 1), Ex. 2. (p.7, Note 1), Ex. 3 (p.7, Note 1), Ex. 4 (p.7, Note 1), Ex. 5 (p. 7, Note 1), Ex. 6 (p. 7, Note 1); Soyars Decl. Ex. 7 (p. 7, Note 1), Ex. 8. (p. 7, Note 1), Ex. 9 (p. 7, Note 1), Ex. 10 (p. 7, Note 1), Ex. 11 (p. 7, Note 1); Ex. 12 (p. 7, Note 1).

[10] Count VII alleges that Emory University and Emory Healthcare failed to prudently monitor those to whom they delegated fiduciary duties, including the Emory Pension Board and Emory Investment Management. Doc. 30 ¶¶293–304.

### A.    Locking the Plans into TIAA-CREF investment options and TIAA recordkeeping (Counts I, II)

TIAA-CREF offered its products and services strictly on a bundled basis requiring plans that wished to provide the TIAA Traditional Annuity to also provide the CREF Stock and Money Market accounts and to use TIAA as recordkeeper. Doc. 30 ¶136. By agreeing to this arrangement, Defendants locked the Plan into providing investment options it did not analyze as a fiduciary, and created a structure precluding Defendants from monitoring investment options on an ongoing basis and removing imprudent ones, as ERISA requires. *Id*. ¶¶137, 249–50; *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015). Thus, Defendants allowed TIAA's financial interest to dictate the Plans' investment selections and recordkeeping arrangement. Doc. 30 ¶¶137, 250. Defendants' locking the Plans into the CREF Stock Account caused the Plans to suffer significant losses compared to prudent alternatives. *Id*. ¶¶137, 251.

### B.    Excessive recordkeeping and administrative fees (Counts III, IV)

The fees of the Plans' investment options are expressed as an "expense ratio"— the percentage of assets deducted from the fund each year, which reduces the value of the shares owned by fund investors. Doc. 30 ¶63. The investment options in the Plans pay a portion of their expense ratios to the Plans'

6

recordkeepers, ostensibly as compensation for recordkeeping services. *Id*. ¶¶65, 153–59. While ERISA does not prohibit revenue sharing, Defendants were responsible for monitoring the *amount* of the payments to ensure it was reasonable for the services provided and to take action to reduce any excessive costs to reasonable levels, such as by negotiating for rebates and soliciting competitive bids from other providers. *Id*. ¶¶58, 69–77, 147–48; 29 U.S.C. §1103(c)(1), §1104(a)(1)(A).

Defendants entirely failed to determine a reasonable recordkeeping fee for the Plans and to ensure that the Plans' recordkeepers received only reasonable compensation. *Id*. ¶¶164–67, 262. According to knowledgeable industry experts, based on the Plans' features, participant level (40,000), and the nature of the services provided, Defendants could have obtained an annual recordkeeping fee for both Plans of $1.25 million (roughly $30/participant). Doc. 30 ¶160. In 2012, TIAA *alone* received $6.2 million from the Retirement Plan—*$583 per participant*—nearly *20 times more* than the reasonable market rate. *Id*. ¶161. Including the fees paid to Fidelity and Vanguard, the Plans paid a total of up to $8.1 million combined and $594 per participant per year from 2010–2014, far in excess of market rates. *Id*. ¶162.

The excessive fees resulted in part from Defendants' decision to use three

recordkeepers for the Plans instead of consolidating to a single recordkeeper. *Id.*

¶¶150, 264. Consolidating to one recordkeeper creates administrative efficiency

and allows a plan to leverage the full participant base achieve economies of scale

and reduce costs. *Id.* ¶149. Similarly situated fiduciaries went to a single

recordkeeper after analyzing the benefits of consolidation. *Id.* ¶¶102–09. Had

Emory engaged in a similar analysis, it would have reached the same conclusion.

*Id.* ¶118. The benefits of a single recordkeeper should have been apparent to Mary

Cahill, Emory's Vice President and Chief Investment Officer, because when she

worked at Xerox Corporation she managed Xerox's defined contribution plan with

a single recordkeeper. *Id.* ¶151. Plaintiffs estimate that total losses to the Plans

from this breach exceed $30 million. *Id.* ¶168; Doc. 52 at 13.

### C. Excessive investment management fees and imprudent investments (Counts V, VI)

The excessive revenue sharing paid to the recordkeepers came from the Plans'

investments, which were mostly retail-class mutual fund shares designed for

investors with a small amount of assets, instead of lower-cost, but otherwise

identical, institutional-class shares of the *exact same* mutual funds. Doc. 30 ¶¶64,

169–79. Because the different share classes are identical in all respects except for

cost, using the higher-cost shares results in participants paying wholly unnecessary

fees. *Id.* ¶169. The recordkeepers had an incentive to have the higher-cost shares in

the Plans because they paid more in revenue sharing than the institutional shares. *Id*. ¶65. If Defendants had recognized this and taken action to further the interests of participants, Defendants would have used the lower-cost versions. *Id*. ¶¶263, 276, 279. In the much smaller Emory Clinic 403(b) plan, Emory used lower-cost share classes, but inexplicably did not do so in Plaintiffs' Plans. *Id*. ¶152.

Rather than independently selecting funds in the participants' best interests, Defendants allowed the Plans' recordkeepers to put 111 of their proprietary funds in the Plans. *Id*. ¶¶124, 182–83, 185, 279. As a result of Defendants' deficient process for monitoring investments, Defendants retained options that charged higher fees and consistently underperformed compared to prudent alternatives available to the Plans. *Id*. ¶¶199–241, 280–83.  Had Defendants used a prudent investment review process, these options would have been removed. *Id*. ¶¶201, 206, 219, 240, 284. Defendants' failure to remove those imprudent options caused the Plans losses of nearly $150 million. *Id*. ¶¶208, 235, 241; Doc. 52 at 14.

## III.    The proposed class definition.

ERISA authorizes any plan participant to bring an action on behalf of a plan to enforce ERISA'S fiduciary duties and to recover all losses to a plan caused by a breach of fiduciary duty. 29 U.S.C. §1132(a)(2), §1109(a). Plaintiffs bring this action "in a representative capacity on behalf of the plan as a whole" to recover

9

losses caused to their Plans by Defendants' breaches, and to seek equitable remedies. *Mass Mut. Lif. Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Through this action, Plaintiffs seek to represent all of the Plans' participants and beneficiaries, with the following class definition:

> All participants and beneficiaries of the Emory University Retirement Plan and the Emory Healthcare, Inc. Retirement Savings and Matching Plan from August 11, 2010 through the date of judgment, excluding Defendants.

Doc. 30 ¶243.

## ARGUMENT

Class certification involves three steps. Although not explicitly required by Rule 23, a plaintiff must first "establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)(internal quotations omitted). Then a proposed class must meet the four requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b). *Id.*; Fed. R. Civ. P.23. Although courts must conduct a "rigorous analysis" to ensure that Rule 23(a) elements are met, *Curriuolo v. GM Co.*, 823 F.3d 977, 981 (11th Cir. 2016), this does not allow courts to "engage in a free-ranging merits inquiries at the certification stage," *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194–95 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to

determining whether the Rule 23 prerequisites for class certification are satisfied."
*Amgen*, 133 S. Ct. at 1195 (citation omitted).

## I.     The proposed class is ascertainable.

A proposed class is ascertainable if the definition contains "objective criteria"
that allows class members to be identified in an "administratively feasible"
manner. *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 Fed. App'x 782, 787
(11th Cir. 2014). This requirement "does not require an overly strict degree of
certainty and is to be liberally applied." *In re Delta/Air Tran Baggage Fee
Antitrust Litig.*, 317 F.R.D. 675, 680 (N.D. Ga. 2016)(Battern, Sr., J.)(citation
omitted). "[A] 'court need not know the identity of each class member before
certification; ascertainability requires only that the court be able to identify class
members at some stage of the proceeding.'" *Karhu v. Vital Pharms., Inc.*, 621 F.
App'x 945, 952 (11th Cir. 2015)(citation omitted).

Here, the class is defined by objective criteria: all participants and beneficiaries
of the Plans from August 11, 2010 through the date of judgment excluding
Defendants. The class members are readily identifiable through participant account
records in possession of the Plans' recordkeepers. *Thorpe v. Walter Inv. Mgmt.,
Corp.*, No. 14-20880, 2016 U.S.Dist.Lexis 13857, *14–17 (S.D. Fla. Mar. 16,
2016)(certifying class in securities fraud case where members could be identified

11

from defendants' investment records); *Mezyk v. U.S. Bank Pension Plan*, No. 09-384, 2011 U.S.Dist.Lexis 13857, *16 (S.D. Ill. Feb. 11, 2011)("It will be a relatively simple matter to ascertain who is in the classes by reference to objective criteria contained within" defendants' records). Thus, the class is ascertainable.

## II.     Plaintiffs satisfy Rule 23(a).

Rule 23(a) requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1346 (11th Cir. 2001). The proposed class satisfies these elements.

### A.     Numerosity

Numerosity asks whether "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). When there are "thousands of purported class members who fit within the proposed class definition . . . joinder would be impracticable" and the numerosity requirement is met. *In re Suntrust Banks*, 2016 U.S.Dist.Lexis 108916, *20; *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)(generally, numerosity is met if the proposed class exceeds forty members).

Here, each of the Plans had at least 10,000 participants throughout the proposed class period, meaning the proposed class included at least 20,000 individuals at all times, and over 45,000 participants as of year-end 2015. Soyars

Decl. Exs. 1–12 (p. 2, Line 6g of each). Joinder is unquestionably impracticable.

### B.    Commonality

"[T]here are questions of law or fact common to the class[.]" Fed.R.Civ.P. 23(a)(2). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Those requirements "also tend to merge with the adequacy-of-representation requirement[.]" *Id.*

Commonality involves "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011)(emphasis in original, internal quotations omitted). Commonality is satisfied when there is at least one common question, the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*, at 350, 359 ("[E]ven a single common question will do." (quotation and editing marks omitted). The commonality test is a "low hurdle." *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009).

Because an ERISA fiduciary breach action is an action on behalf of a plan regarding duties owed at the plan level, "commonality is quite likely to be satisfied." *Schering*, 589 F.3d at 599 n.11. As the underlying question of Defendants' liability under ERISA is common to all class members, "the

determination of whether a breach of fiduciary duty occurred will provide classwide resolution." *In re Suntrust Banks*, 2016 U.S.Dist.Lexis 108916, at *21.

Here, the Plans' fiduciaries owed their duties to the Plans and made decisions at the Plan level affecting the Plans as a whole, and hence, all participants. See 29 U.S.C. §1104(a)(1). The same menu of options, the same fee structures, and the same fiduciary actions and omissions applied to *all* participants.[11] Therefore, there are numerous common questions upon which all class members' claims depend, including: (1) whether each defendant is a fiduciary; (2) whether each defendant breached its fiduciary duty or engaged in a prohibited transaction as alleged by Plaintiffs; (3) whether the Plans' suffered resulting; (4) how to calculate the Plans' losses; and (5) what Plan-wide equitable relief should be imposed to remedy such breaches and prohibited transactions and to prevent future ERISA violations.

The evidence needed to answer these contentions are Plan-level facts and thus are the same for all the Plans' participants. These answers do not depend on particular circumstances of any one participant. Therefore, the questions of law and fact in this action are common to each class member, as numerous federal courts in similar cases have recognized. *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D.Minn. 2014)("the questions of whether Defendants breached their fiduciary

---

[11] Doc. 41-2 at 8–17, 23–28; 35–40; Doc. 41-3 at 8–13, 23–28, 35–40; Ex. 15 at 1–3, 6.

duties by causing the Plan to select imprudent investment options or pay excessive record-keeping fees, and whether the Plan suffered losses from those breaches, are common to all Plan participants' claims and, therefore, will generate answers common to all of the putative class members."); *Tibble v. Edison Int'l*, No. 07-5359, 2009 U.S.Dist.Lexis 120939, at *8–9 (C.D.Cal. June 30, 2009), aff'd, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S.Ct. 1823 (2015); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008)("Defendants owed identical fiduciary duties to all members of the proposed class with respect [to] the Plan. Because this case involves Defendants' conduct as to all participants in the Plan, Rule 23's 'commonality' requirement is satisfied."). Because Defendants owed identical fiduciary duties to all members of the class and took actions at the Plan level, commonality is satisfied.

### C.   Typicality

The "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P.23(a)(3). The "claims need not be identical to satisfy the typicality requirement; rather, there need only exist a 'sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012)(citation omitted). The typicality

requirement is met "where the named plaintiffs' claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class." *Belton v. Georgia*, No. 10-583, 2011 U.S.Dist.Lexis 25454, *14 (N.D. Ga. Mar. 14, 2011)(Story, J.)(citation omitted); *see also In re Suntrust Banks*, 2016 U.S.Dist.LEXIS 108916, *22–23.

Because a §1132(a)(2) claim is inherently a representative claim, any participant's claim is necessarily typical of the claims of the class, since any participant is asserting <u>the Plans'</u> claim. For these reasons, courts routinely find any participant's fiduciary breach claims to be typical of the claims of all participants in the plan. *Piazza*, 273 F.3d at 1351 (finding typicality because ERISA fiduciary breach claims on behalf of a plan "arise from precisely the same practice and the legal issues are identical"); *In re Suntrust Banks*, 2016 U.S.Dist.Lexis 108916, *23–24 (because ERISA fiduciary breach claims "are brought on behalf of the Plan," purported conflicts between the representative and the class members "are irrelevant"); *Krueger*, 304 F.R.D. at 573 (finding typicality satisfied for claims "alleging breaches of fiduciary duties Defendants owed to the Plan," because named plaintiffs and class members were "seeking redress of similar grievances under the same legal and remedial theories"); *Kanawi*, 254 F.R.D. at 110 ("In light of the representative nature of a suit filed pursuant to

16

[§1132](a)(2) . . . Plaintiffs' claims are sufficiently typical of those of other class members."); *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64–66 (M.D.N.C. 2008).

Here, because commonality and typicality requirements "tend to merge" (*Dukes*, 564 U.S. at 349 n.5), Plaintiffs' claims are typical for many of the same reasons that there are overwhelmingly common issues of fact and law. Because Defendants' actions were directed to and affected the Plans as a whole, the claims of Plaintiffs and class members all arise from the same events and course of conduct. All participants paid a portion of the Plans' asset-based fees, which were assessed against each of the Plans' investments. Doc. 41-2 at 6–17, 23–28; 35–40; Doc. 41-3 at 6–13, 23–28, 35–40. The Plaintiffs and all class participants are bringing the same claims under the same legal and remedial theory: enforcement through §1132(a)(2) of Defendants' obligations under §1109(a) to make good to the Plan the losses caused by Defendants' breaches of duty and prohibited transactions and to obtain appropriate equitable relief. Typicality is satisfied.

## D.   Adequacy

Plaintiffs "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy requirement ensures that there are no potential "conflicts of interests between the named parties and the class they seek

to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

"'Adequacy of representation' means the class representative has common interests with the unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza*, 273 F.3d at 1346. Adequacy "also factors in competency and conflicts of class counsel." *Amchem*, 521, U.S. at 626 n.20.

### 1. Plaintiffs have no conflicts with other class members and will vigorously prosecute this action on behalf of the class.

Plaintiffs' interests are aligned with the class members' interests because they all are acting on behalf of their Plan in seeking to enforce the fiduciary duties that Defendants owed to the Plans and to recover damages and equitable relief that are due to the Plans. See 29 U.S.C. §1109(a); *Russell*, 473 U.S. at 142 n.9.

Because Plaintiffs are pursuing claims on behalf of the Plans, and are not pursuing individual claims, there are no conflicts between Plaintiffs' individual interests and the interests of the class. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012); *Krueger*, 304 F.R.D. at 574–75.[12] To the contrary, the Plaintiffs and all class members share the same objectives, share the same factual and legal positions, and share the same interest in establishing Defendants' liability. *See In re Delta*, 317 F.R.D. at 680.

---

[12] Mere hypothetical or minor conflicts among class members do not defeat class certification. *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012).

18

Additionally, a class representative needs only a basic understanding of the claims and a willingness to participate in the case. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). In a complex case such as this, which requires a "great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003).

Each of the named Plaintiffs understands the nature of their claims and their duties as class representatives to vigorously prosecute this case through its conclusion. Henderson Decl. ¶¶2–3, 5; Guzman Decl. ¶¶2–3, 5; Goldberg Decl. ¶¶2–3, 5; Corpening Decl. ¶¶2–3, 5; Rackstraw Decl. ¶¶2–3, 5; Wright Decl. ¶¶2–3, 5; Moore Decl. ¶¶2–3, 5; James Decl. ¶¶2–3, 5; Waller Decl. ¶¶2–3, 5.

Plaintiffs have amply demonstrated their commitment to date by reviewing court documents sent to them by their attorneys and monitoring the progress of the action. Henderson Decl. ¶4; Guzman Decl. ¶4; Goldberg Decl. ¶4; Corpening Decl. ¶4; Rackstraw Decl. ¶4; Wright Decl. ¶4; Moore Decl. ¶4; James Decl. ¶4; Waller Decl. ¶4.Thus, each of the Plaintiffs satisfies the adequacy requirement.

19

>   **2.   Plaintiffs' counsel has no conflicts with the class, is qualified and experienced, and will vigorously prosecute this action on behalf of the class.**

Rule 23(g) provides factors for the Court to assess in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed.Civ.P. 23(g).

Plaintiffs' counsel—Schlichter Bogard & Denton LLP—has unparalleled experience in prosecuting ERISA fiduciary breach class actions such as this and will fairly and adequately represent the interests of the class. Declaration of Jerome J. Schlichter, ¶¶2–27. The firm conducted a lengthy investigation of potential claims in this action, and is committed to devoting all necessary resources to representing the class and vigorously prosecuting this action, as it has done in many prior ERISA fiduciary breach actions. *Id.* ¶¶7, 10–14. The firm's experience is shown by its appointment as class counsel in 18 other, large ERISA fiduciary breach class actions, where it obtained multi-million dollar settlements and judgments, and in *Tibble*, 135 S. Ct. 1823—the only 401(k) excessive fee case taken by the U.S. Supreme Court—in which it obtained a unanimous opinion in favor of ERISA plan participants, and two trial judgments for participants.

Schlichter Decl. ¶¶6, 9, 13. The firm is recognized as a "pioneer and the leader in the field" of 401(k) plan excessive fee litigation (*Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 U.S.Dist.Lexis 93206, *4–5 (S.D. Ill. July 17, 2015)) and "clearly experts in ERISA litigation" (*Tussey v. ABB, Inc.*, No. 06-4305, 2012 U.S.Dist.Lexis 157428, *10 (W.D. Mo. Nov. 2, 2012)). Thus, Schlichter Bogard & Denton LLP should be appointed class counsel under Rule 23(g).

## III.     Plaintiffs meet the requirements of Rule 23(b)(1).

Having satisfied all the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). The Eleventh Circuit holds that an ERISA fiduciary breach claim under §1132(a)(2) should be certified under Rule 23(b)(1) to prevent prejudice to the defendant from possible inconsistent adjudications. *Piazza*, 273 F.3d at 1352–53. Indeed, courts in ERISA fiduciary breach cases have consistently recognized §1132(a)(2) claims as "paradigmatic" Rule 23(b)(1) class actions. *In re Suntrust Banks*, 2016 U.S.Dist.Lexis 108916, *26 (quoting *Schering*, 589 F.3d at 604, collecting cases); *Tatum*, 254 F.R.D. at 67; *Krueger*, 304 F.R.D. at 575–78; *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2011 U.S.Dist.Lexis 94451, *62 (C.D. Cal. Mar. 29, 2011); *Kanawi*, 254 F.R.D. at 111; *Tussey v. ABB Inc.*, No. 06-4305, 2007 U.S.Dist.Lexis 88668, *27 (W.D. Mo. Dec. 3, 2007).[13]

---

[13] *See also*, orders granting Rule 23(b)(1) certification in *George v. Kraft Foods*

Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and if . . . (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Rule 23(b)(1)(A) "'takes in cases where the party is obligated by law to treat the members of the class alike[.]'" *Amchem*, 521 U.S. at 614 (citation omitted).

"One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed.R.Civ.P.23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A). The assets of an ERISA plan, including these Plans, are held in a single trust for the benefit of all participants. 29 U.S.C. §1103(a).

---

*Global Inc.*, 251 F.R.D. 338, 351–52 (N.D. Ill. 2008); *Beesley v. Int'l Paper Co.*, No. 06-703, Doc. 240 (S.D. Ill. Sept. 30, 2008), *vacated on other grounds*, 633 F.3d 574 (7th Cir. 2011); *Taylor v. United Techs. Corp.*, No. 06-1494, 2008 U.S.Dist.Lexis 43655, at *15 (D. Conn. June 3, 2008); *Loomis v. Exelon Corp.*, No. 06-4900, 2007 U.S.Dist.Lexis 46893, *11 (N.D. Ill. June 26, 2007); *Tibble v. Edison Int'l*, No. 07-5359, 2009 U.S.Dist.Lexis 120939, *20, *29 (C.D. Cal. June 30, 2009); *Spano v. Boeing Co.*, 294 F.R.D. 114 (S.D. Ill. 2013); *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388, 405 (S.D. Ill. 2012), and *Abbott*, No. 06-701, Doc. 403 at 3–6, 12 (S.D. Ill. Aug. 1, 2014).

Defendants' fiduciary duties are owed to the Plan, and thus to all participants as a class. 29 U.S.C. §1104(a)(1). Defendants owed their fiduciary duties to <u>all</u> participants in the Plans, and hence to all class members. In discharging their duties to the Plans, Defendants, as fiduciaries, were obligated to treat all participants (hence all class members) alike.

Allowing over 45,000 individual class members to pursue this action on behalf of the Plans could result in varying adjudications over whether Defendants breached their duties and committed the prohibited transactions as alleged, which Defendants are liable for these actions, and how to measure damages to the Plans and other relief. As to the administrative and recordkeeping fees claim, the fact-finder will have to determine the Plans' losses by deciding—with expert testimony—how much the recordkeepers were paid, whether the services were necessary, and whether the fees were reasonable. For the imprudent investment options, the fact-finder will determine whether Defendants acted in the interests of participants and conducted a prudent and thorough investigation of Plan investments on an ongoing basis, whether the options were prudent and reasonably priced, and the proper benchmark alternative to measure losses to the Plans. *See, e.g., Tussey v. ABB Inc.*, 850 F.3d 951, 959 (8th Cir. 2017)(where fiduciary breached its duty in replacing a fund with a fund that benefited the fiduciary and

plan recordkeeper, the district court must measure the plans' resulting losses).

Injunctive relief may be appropriate to require a removal of certain investment

options or a bidding process to replace the Plans' recordkeepers. *See, e.g.*, *Tussey*

*v. ABB, Inc.*, No. 06-4305, 2012 U.S.Dist.Lexis 45240, at *114 (W.D. Mo. Mar.

31, 2012)(ordering breaching fiduciary to "utilize[] a competitive bidding process .

. . to select a new recordkeeper."). Separate individual adjudications to resolve any

one of these issues would create incompatible standards for Defendants in so far as

losses or profits they must restore to the Plans under §1109(a), and what

Defendants must do to the Plans' investment options and service providers. As

courts including the Eleventh Circuit have recognized, such claims should be

certified under Rule 23(b)(1)(A). *Piazza*, 273 F.3d at 1352–53; *Krueger*, 304

F.R.D. at 576–77 (citing cases); *Tibble*, 2009 U.S.Dist.Lexis 120939, *20–21, *27;

*Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009).

   Similarly, under Rule 23(b)(1)(B), one participant's action over these claims

"as a practical matter, would be dispositive of the interests" of the other

participants' actions over the same claims because they concern the same actions,

damages, and fiduciary duties owed to the Plans. Fed.R.Civ.P. 23(b)(1)(B). An

action "which charges a breach of trust be an indenture trustee or other fiduciary

similarly affecting the members of a large class of security holders or beneficiaries,

and which requires an accounting or like measures to restore the subject of the trust" are typical Rule 23(b)(1)(B) actions. Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Because of the trust-like nature of a defined contribution plan, with fiduciary duties owed to the *plan* and not to individual participants, many courts have found like claims to be paradigmatic Rule 23(b)(1)(B) class actions. *Tatum*, 254 F.R.D. at 67; *Schering*, 589 F.3d at 604; *Krueger*, 304 F.R.D. at 577–78. Even if absent participants were not barred by res judicata from litigating the same claims on behalf of the Plans (*see Smith v. Bayer Corp.*, 564 U.S. 299, 313–15 (2011)), as a "practical matter" a prior adjudication of whether the fiduciaries breached their duties to the Plans would influence a subsequent court's adjudication of the same claims. Thus, Plaintiffs' satisfy both Rule 23(b)(1)(A) and (b)(1)(B).

## CONCLUSION

The Court should certify all of Plaintiffs' claims as a class action under Rule 23(b)(1), and appoint Geneva Henderson, Rena Guzman, Jacqueline Goldberg, Connie Corpening, Joanne Rackstraw, Joann D. Wright, Deon M. Moore, Cynthia T. James, and Huberta W. Waller as class representatives.[14] Under Rule 23(g), the Court should also appoint Schlichter Bogard & Denton LLP as class counsel.

---

[14] Plaintiffs move to withdraw Jacqueline Blackwell, Kathryn Presley, and Helen Dulock as named plaintiffs in a concurrently filed motion.

October 2, 2017

Respectfully submitted,

/s/ Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
Jerome J. Schlichter (*pro hac vice*)
Michael A. Wolff (*pro hac vice*)
Troy A. Doles (*pro hac vice*)
Kurt C. Struckhoff (*pro hac vice*)
Heather Lea (*pro hac vice*)
Ethan D. Hatch (*pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Phone: (314) 621-6115
Fax: (314) 621-5934

*Counsel for Plaintiffs*

/s/ Bradley S. Wolff
Bradley S. Wolff
Georgia Bar No. 773388
SWIFT, CURRIE, MCGHEE, & HIERS, LLP
1355 Peachtree St., N.E., Ste. 300
Atlanta, GA 30309-3231
Phone: (404) 874-8800
Fax: (404) 888-6199
brad.wolff@swiftcurrie.com

*Local Counsel for Plaintiffs*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C. The foregoing was prepared on computer using Times New Roman font (14 point).

/s/ Jerome J. Schlichter
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Jerome J. Schlichter
Attorney for Plaintiffs