UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GENEVA HENDERSON, *et al.,*

       Plaintiffs,

   v.

EMORY UNIVERSITY, *et al.,*

       Defendants.

CIVIL ACTION NO.

1:16-CV-2920-CAP

## O R D E R

The plaintiffs bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). Before the court is the plaintiffs' motion for class certification [Doc. No. 77] under Federal Rule of Civil Procedure ("Rule") 23. The plaintiffs' motion also asks the court to appoint them as the class representatives and their attorneys as class counsel. After reviewing the record, the court enters the following order.

## I.   Background

The plaintiffs are participants and beneficiaries of two retirement plans sponsored by Emory University: the Emory University Retirement Plan (the "Retirement Plan") and the Emory Healthcare, Inc. Retirement Savings and Matching Plan (the "Healthcare Plan," and together with the

Retirement Plan, the "Plans").  Each plan is in the largest 0.1% of all defined contribution plans in the United States based on asset size.  As of December 31, 2015, the Plans had at least 45,000 total participants—around 22,000 in the Retirement Plan and 23,000 in the Healthcare Plan.  Each Plan also had at least 10,000 participants since the beginning of the proposed class period (August 11, 2010).

The Plans provide participants with investment options to choose from for their individual accounts.  Individual accounts are based on the value of the participant's contributions and investment earnings, and are charged a portion of the Plans' of administrative expenses.  Overall, participants could select from among 111 different investment options from three vendors: TIAA, Fidelity, and Vanguard.   These same three entities serve as recordkeepers for the Plans and are paid mostly through an asset-based revenue sharing structure.

The plaintiffs allege that the defendants are the Plans' fiduciaries and bring claims against them under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2).  That section permits participants and beneficiaries to bring suit under 29 U.S.C. § 1109(a), which holds plan fiduciaries personally liable for a breach of their duties under ERISA:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

The plaintiffs allege that the defendants breached their fiduciary duties of loyalty and prudence under ERISA by (1) locking the Plans into providing certain investment options and Plan recordkeepers; (2) engaging in transactions that are prohibited under ERISA Section 406, 29 U.S.C. § 1106(a)(1), which generally prohibits transactions with a "party in interest"; (3) providing the Plans with investment options that were unreasonably expensive; (4) retaining underperforming investments; and (5) failing to monitor the Plans' fiduciaries.

The plaintiffs seek to certify the following class:

> All participants and beneficiaries of the Emory University Retirement Plan and the Emory Healthcare, Inc. Retirement Savings and Matching Plan from August 11, 2010 through the date of judgment, excluding Defendants.

Pls.' Mot. at 1 [Doc. No. 77].

The defendants oppose class certification under two general arguments. First, they say that the plaintiffs lack standing to represent the proposed class. And second, they say that the plaintiffs have failed to meet the requirements of Rule 23, which provides the criteria for class certification.

## II.   Standing

A plaintiff must have both statutory and constitutional standing to bring a claim under ERISA. *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010). A plaintiff has statutory standing by being a plan participant, beneficiary, fiduciary or the Secretary of Labor. 29 U.S.C. § 1132(a)(2). The plaintiffs here meet that test. For constitutional standing, a plaintiff must show that he suffered an injury in fact—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

The defendants challenge the plaintiffs standing on two grounds: (1) that certain of the plaintiffs fail to show a concrete and particularized injury; and (2) that the named plaintiffs cannot have standing to bring claims based

4

on the funds in which they did not, themselves, invest.   The court will address these arguments in turn.

First, the defendants point to snippets of deposition testimony that they argue show that certain of the plaintiffs do not believe they suffered an injury or otherwise fail to adequately articulate what those injuries are. Having reviewed the transcripts, the court finds otherwise.   At most, the plaintiffs' depositions demonstrate that they might not fully grasp the complex factual and legal issues involved in the case—which "is understandable." *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2017 WL 3868803, at *7 (S.D.N.Y. Sept. 5, 2017).   And this topic is more appropriately suited for the adequacy requirement of Rule 23(a)(4), which the court addresses below.   What is relevant to the standing analysis is whether plaintiffs have sufficiently alleged concrete and particularized injuries.   They have.   *See* Second Amended Compl. ("Compl.") at ¶8 [Doc. No. 108] (detailing the individual injuries of the named plaintiffs based on the alleged breaches of fiduciary duty to the Plans).

Second, the defendants argue that the named plaintiffs lack standing to represent the Plans' participants who did not invest in the same funds. Collectively, the named plaintiffs invested in 36 of the 111 funds offered by the Plans.   The defendants say that the plaintiffs have no standing to bring

claims based on the performance or fees of the other 75 funds in which they did not invest. This would mean that participants who invested in the other 75 funds should not be included in the class.

But courts have recognized that an ERISA plaintiff who has established his own standing may seek relief on behalf of a plan and its participants even if that relief "sweeps beyond his own injury." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009); *see also, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("[T]he standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved."). Here, the named plaintiffs have sufficiently established standing for their claims, including that they have suffered an injury. Whether they may properly represent the class as proposed—all participants rather than just those who invested in the same 36 of 111 funds—is a matter of satisfying the requirements of Rule 23. *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 n.9 (D. Minn. 2014) ("[W]hether [the plaintiffs] can represent Plan participants whose claims are based on other injuries is a matter of class certification, not standing.").

In sum, the court finds that the defendants' attacks on the plaintiffs' standing are unpersuasive and do not serve as a basis to defeat class certification.

## III.   Class Certification under Rule 23

A case may be certified as a class action only if it satisfies all four requirements of Rule 23(a) and at least one of the alternative requirements of Rule 23(b).  *Rutstein v. Avis Rent–A–Car Sys. Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).  Because it is the plaintiffs who seek class certification, they bear the burden of establishing that these requirements have been met.

As to Rule 23(a), the plaintiffs must show that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These four prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy.  *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

If the requirements of Rule 23(a) are met, the plaintiffs must then establish at least one of the requirements in Rule 23(b).  The plaintiffs have

chosen to seek certification under Rule 23(b)(1), which requires them to show that:

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b).

In addition, while not expressly included in Rule 23, "a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation omitted).

The court must conduct a "rigorous analysis" to determine whether the prerequisites of Rule 23 have been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). This analysis will often "entail some overlap with the merits of the plaintiff's underlying claim," such that the court may consider merits issues that also bear directly on class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Thus, while courts may not conduct

"free-ranging merits inquiries at the certification stage," such questions may be considered "to the extent—but only to the extent—that they are relevant" to the Rule 23 analysis. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

### A.    Ascertainability

"[C]ourts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 679 (N.D. Ga. 2016).   A class is ascertainable when its definition contains "objective criteria that allow for class members to be identified in an administratively feasible way." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 415–16 (N.D. Ga. 2017) (quoting *Karhu v. Vital Pharm., Inc.*, 621 Fed. App'x 945, 946 (11th Cir. 2015)).   A plaintiff may rely on business records to establish class membership so long as "the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Karhu*, 621 F. App'x 948.

The plaintiffs' proposed class is defined as "All participants and beneficiaries of [the Plans] from August 11, 2010 through the date of judgment, excluding Defendants." Pls' Mot. at 1 [Doc. No. 77]. This criteria is objective and the identification of its members is administratively feasible

via the Plans' participant account records.  In addition, the defendants do not dispute ascertainability.  Thus, the court finds that the proposed class is ascertainable.

### B.   Rule 23(a)

#### 1.   Numerosity

The plaintiffs must show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts consider several factors in determining whether joinder is practicable, including the size of the class, the nature of the action, the size of each members' claim, and their geographical dispersion.  *United Steelworkers of Am., AFL-CIO-CLC v. Ivaco, Inc.*, 216 F.R.D. 693, 696 (N.D. Ga. 2002).

The plaintiffs allege that the Plans had at least 20,000 participants throughout the proposed class period and over 45,000 participants as of December 31, 2015.  This number of potential class members is facially sufficient to satisfy numerosity.  *Id.* 696–97 (finding class of 504 retires satisfied numerosity requirement in ERISA action).  In addition, the defendants do not appear to oppose numerosity.  At most, they assert that the plaintiffs may only represent an unknown subset of the some 45,000 that would include only those participants who invested in the same 36 of 111 funds as the plaintiffs.  But even if it were appropriate to narrow the

proposed class on this basis, given the large number of plan-wide participants, the court sees no reason why the numerosity requirement would not still be met. Accordingly, the court finds that the plaintiffs have established numerosity.

### 2. Commonality

Rule 23(a)(2) requires the plaintiffs to show that "there are questions of law or fact that are common to the class." To satisfy commonality, the claims must depend on a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350).

Importantly, unlike Rule 23(b)(3)—which is not relevant to the plaintiffs' class certification motion—Rule 23(a)(2) does not require common questions of fact or law to predominate over individual ones. *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). Instead, "even a single common question will do." *Carriuolo*, 823 F.3d at 984. "This is a 'low hurdle' to overcome." *Owens*, 323 F.R.D. at 417–18 (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)).

The plaintiffs' claims present a number of questions common to the proposed class. These include (1) whether the defendants are fiduciaries to the Plans; (2) whether the defendants breached their fiduciary duties; (3) whether the Plans suffered losses; (4) how to calculate those losses (if any); and (5) what relief is appropriate. These questions are capable of class-wide resolution, as other courts have found. *See, e.g., Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014).

However, the defendants argue that issues with the statute of limitations require individual analyses that defeat commonality. This is because breach of fiduciary duty claims under ERISA must be brought by a plaintiff within three years of having "actual knowledge" of the claim. 29 U.S.C. § 1113; *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987) "[I]t is not enough that [a plaintiff] had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues."). The defendants argue that some of the named plaintiffs received disclosures with information about their investments' performance and fees more than three years before this suit was filed. They also posit that at least some of the proposed class members received similar disclosures, potentially including information about the number of recordkeepers. According to the

defendants, determining who had "actual knowledge" of these facts is an individualized analysis that defeats commonality.  The court disagrees.

Even assuming that the statute of limitations presents individual inquiries, it also presents common ones.  For instance, whether the disclosures that the defendants point to—which appear to be materials made available to the Plans' participants generally[1]—did, in fact, provide a given plaintiff or class member with "actual knowledge" of the claims.  That issue is capable of class-wide resolution and is central to the validity of the claims. *Carriuolo*, 823 F.3d at 984.  Further, the statute of limitations issue does not negate the many other common issues the court identified above.  That there are multiple common questions that could be resolved in a single stroke is enough for the plaintiffs to meet their low hurdle for commonality under Rule 23(a)(2).  *Dukes*, 564 U.S. at 359 (stating that "even a single common question will do") (citations omitted); *Williams*, 568 F.3d at 1356.  The plaintiffs have satisfied the commonality requirement.

---

[1] The sources of information the defendants point to are the Plan websites, quarterly account statements, and a 2012 fee disclosure letter which was issued to the Plans' participants [Doc. No. 102 at 29–30].

### 3.   Typicality[2]

The plaintiffs must show that their claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). While related to the commonality requirement, typicality focuses on "the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). A plaintiff's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). But a plaintiff's claims or defenses need not be identical to the proposed class, and minor variations will not render the plaintiff's claims atypical. *Id.* Instead, a plaintiff satisfies typicality by showing that the claims or defenses "arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

The plaintiffs have met their burden as to typicality. The class members' claims are based on the same events and legal theories—breach of fiduciary duty in managing and monitoring the Plans. Proof of the

---

[2] In their brief opposing certification, the defendants challenge both commonality and typicality simultaneously based on the statute of limitations issue. This makes sense, as those two requirements for certification tend to merge. *Falcon*, 457 U.S. at 157 n.13. However, the court will address typicality separately here.

defendants' alleged misconduct and the alleged harm would be the same for each class member rather than turning on individual circumstances. Even still, the defendants challenge typicality based on the exact same statute of limitations argument that they assert against commonality. Their argument similarly fails as to typicality.

As noted above, whether the disclosures provided "actual knowledge" to the plaintiffs or class members presents a common question rather than defeats certification. By the same token, the statute of limitations defense is not atypical to the named plaintiffs. The defense is focused on the same conduct (receipt of fee and performance disclosures apparently available to all participants) and asserts the same legal theory (that the claims are time-barred). While the defendants also hypothesize that the putative class members may have had "actual knowledge" of their claims from other sources, that assertion is based on mere speculation and therefore cannot defeat certification. Should the evidence later show that a named plaintiff is uniquely subject to the defense (or others) as the case proceeds, the court may revisit the issue and decertify the class to the extent a representative is rendered atypical.

### 4.    Adequacy

For the final requirement of Rule 23(a), the plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement ensures that the legal rights of absent class members are protected. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987). There are two areas for which the plaintiffs must demonstrate adequacy. First, the plaintiffs must show that they and their counsel "will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Second, the plaintiffs must show that no "substantial conflicts of interest exist between the representatives and the class." *Id.* The defendants argue that the plaintiffs fail to establish either.

### a.    Prosecution of the Action

Whether the named plaintiffs will prosecute the action with sufficient vigor generally turns on "whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." *Kirkpatrick*, 827 F.2d at 726. The defendants do not challenge the qualifications, experience, or ability of the plaintiffs' counsel to prosecute the action. They instead argue that the named plaintiffs lack the knowledge and understanding of their claims to represent the proposed class.

16

While "a potential class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives," adequacy "generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Id.* at 727.  Inadequacy for a plaintiff's lack of involvement or awareness is rare.  It requires the plaintiffs to "have abdicated their role in the case beyond that of furnishing their names as plaintiffs, [such that] the attorneys, in essence, are the class representative." *Id.* (citations omitted).  Certification will be therefore be denied when the plaintiffs display "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interest of the attorneys." *Id.*  Even still, "[t]here is no requirement under *Kirkpatrick* that the lead plaintiff must possess expert knowledge of the details of the case," and the plaintiffs are expected to rely on counsel for guidance and advice. *In re Wells Real Estate Inv. Tr., Inc. Sec. Litig.*, No. 1:07-CV-862-CAP, 2009 WL 10688777, at *5 (N.D. Ga. Sept. 16, 2009).[3]

---

[3] The Eleventh Circuit adequacy standard arising from *Kilpatrick* and its progeny is well-founded in Supreme Court precedent. *See In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 696 (N.D. Ga. 2002) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966)); *Baffa v. Donaldson, Lufkin &*

Here, the plaintiffs have each responded to discovery requests, appeared for depositions, and submitted affidavits attesting to their participation in this action and vowing to vigorously pursue the case. Their deposition testimony also indicates at least a basic understanding of the claims—that the defendants improperly managed and caused losses to the Plans, including via excessive fees. Although the defendants criticize the plaintiffs' ability to explain the allegations of the law suit, the plaintiffs' claims are not simply stated. ERISA itself represents a highly dense regulation, and claims arising from it are equally complex. That a plaintiff might not fully understand the facts and legal theories of this complex ERISA action is understandable. *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2017 WL 3868803, at *7 (S.D.N.Y. Sept. 5, 2017) ("It is understandable, and excusable, that Plaintiffs, who are not lawyers or investment professionals, may have had difficulty answering questions about [their ERISA] claims."); *Sims v. BB & T Corp.*, No. 1:15-CV-

---

*Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) ("The Supreme Court in *Surowitz* . . . expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance."). And while this standard is generally applied in the securities litigation context, it is equally applicable to putative class actions brought under ERISA. *See In re BellSouth Corp., ERISA Litig.*, No. 1:02-CV-2440-JOF, 2005 WL 8154294, at *9 (N.D. Ga. Sept. 30, 2005) (citing *Kilpatrick* when addressing the adequacy requirement of Rule 23(a)); *see also Sims v. BB & T Corp.*, No. 1:15-CV-732, 2017 WL 3730552, at *5 (M.D.N.C. Aug. 28, 2017).

732, 2017 WL 3730552, at *5 (M.D.N.C. Aug. 28, 2017) ("The complex nature of ERISA fiduciary breach claims requires investors to rely on their attorneys and hired experts, and such reliance does not make the plaintiffs inadequate representatives.").

While the deposition testimony highlighted by the defendants raises some concerns, the plaintiffs sworn submissions, involvement in discovery, and additional testimony indicating knowledge of the claims are sufficient to show that the plaintiffs have not "abdicated their role in the case beyond that of furnishing their names as plaintiffs," *Kirkpatrick*, 827 F.2d at 726, and the court finds that the plaintiffs have appropriately relied on counsel in this action. Accordingly, the court finds that the plaintiffs have demonstrated that they and their counsel will adequately prosecute the action.

### b. Intra-Class Conflicts

Rule 23(a)(4) also requires the plaintiffs to show that no "substantial conflicts of interest exist between the representatives and the class." *Id.* "Minor conflicts alone are insufficient to defeat adequacy." *Owens*, 323 F.R.D. at 418. Adequacy is only defeated when there is a "fundamental" conflict going to the specific issues in controversy. *Valley Drug*, 350 F.3d at 1189. "A fundamental conflict exists where some party members claim to

19

have been harmed by the same conduct that benefitted other members of the class." *Id.* Conversely, a conflict is not fundamental when "all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." *Owens*, 323 F.R.D. at 418 (quoting *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)). Finally, adequacy is not defeated by mere speculative or hypothetical conflicts. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 681 (N.D. Ga. 2016) (citations omitted). Rather, courts should monitor such "potential" conflicts as the case proceeds and may "revisit and de-certify the class" should they actually emerge. *Id.*

The defendants argue that three of the plaintiffs' underlying theories would create intra-class conflicts: (1) the plaintiffs' consolidation theory; (2) the plaintiffs' underperformance theory; and (3) the plaintiffs' revenue-sharing theory. The court will address these theories in turn.

### i.      The Consolidation Theory

First, the defendants argue that the plaintiffs' consolidation theory—that the defendants should have consolidated the Plans' recordkeepers to one vendor rather than provide three (TIAA, Fidelity, and Vanguard) to choose from—creates conflicts based on individual preferences for certain vendors. They argue that many are happy with TIAA, for example, because of the

proprietary investments it offers, which are also bundled to TIAA's services as a recordkeeper.  In particular, they point out that TIAA offers annuity investments through the Plans while Fidelity and Vanguard do not.  The defendants also say that some participants prefer to have more than one recordkeeper to diversify their portfolios.  These contentions speak to the same concern—that selecting, for example, Fidelity as the Plans' only recordkeeper would eliminate the investment options offered solely through TIAA (like annuities).  Accordingly, the defendants argue there would be conflicts among the class members on whether to consolidate to one vendor and which of the three vendors to choose.  However, this issue does not create a fundamental conflict here.

The plaintiffs do not propose that one of the three current recordkeepers be selected as the sole vendor.  They simply allege that using multiple recordkeepers caused the Plans to incur unreasonable recordkeeping fees.  Specifically, the plaintiffs allege that prudent plan fiduciaries of large defined contribution plans, like the Plans here, would use single rather than multiple recordkeepers to obtain "reasonable recordkeeping fees" by leveraging plan assets and by saving costs through a simpler structure that avoids service duplication.  Compl. at ¶148 [Doc. 108]. And the defendants' concerns about the elimination of certain investment

options also appears overstated.  The basis for this argument is that certain proprietary investment options were only available through a given recordkeeper.  But the plaintiffs allege that, under the proper service structure, the options available under a single recordkeeper would not be so limited.  In fact, the Plans' current structure of tying (or "bundling") proprietary investments to a given recordkeeper's services is another issue that the plaintiffs fault.  The complaint alleges that, rather than bundling the recordkeeping services, prudent fiduciaries would use an "open architecture" model for the Plans that does not limit participants to the recordkeeper's proprietary investment products and would also facilitate "negotiation of reasonable recordkeeping fees," among other benefits. Compl. at ¶77 [Doc. 108].

In sum, the plaintiffs are not seeking a particular recordkeeper for the Plans that would put the class members at odds.  Nor do they request a recordkeeper that would be unable to offer certain investments, like annuities.  They instead allege that consolidating the recordkeeping services to a single vendor—particularly one that utilizes the "open architecture" model—would have resulted in more reasonable recordkeeping fees.  This theory is aimed at alleviating the allegedly excessive recordkeeping fees and allowing more independent investment product selection for the Plans.  The

court finds that these objectives are shared by the class members such that the plaintiffs' consolidation theory does not create a fundamental conflict.

### ii.    The Underperformance Theory

Second, the defendants argue that the plaintiffs' theory of underperforming, imprudent investments creates conflicts. They argue that those who lost money from the allegedly imprudent investments would be in conflict with those who made money from them. Yet the defendants provide no evidence of any participant who actually profited from the allegedly imprudent investments. Because the defendants fail to bring this conflict beyond the realm of mere speculation, it does not defeat certification. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. at 681 ("[A] conflict will not defeat the adequacy requirement if it is 'merely speculative or hypothetical.'" (quoting *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir.2010))). And while the plaintiffs seek to recover losses to the Plans based on the imprudent investments, nothing indicates that a participant who gained from those investments would have to give those profits back, keeping the class members' interests aligned.

On the same topic, the defendants argue that class members' interest diverge due to each participant's individual investments strategies, which they say may favor the inclusion of the allegedly imprudent investments.

23

But this does not affect the core legal interest at stake for this theory of liability—whether including those investments in the Plans amounts to a breach of fiduciary duty in violation of ERISA requirements. If including those investments constitutes a breach, each participant has the same legal interest of having the Plans' resulting losses restored and the imprudent investments removed; none of them would have a legal interest in maintaining investments that run afoul of ERISA. *See, e.g.*, *Sacerdote v. N. Y. Uni.*, No. 16-cv-6284, 2018 WL 840364, *4 (S.D.N.Y Feb. 13, 2018) ("If, in fact, plaintiffs are correct that the inclusion of these funds was a breach of the duty of prudence, then no plan participant would have a legal interest in continuing to invest in a plan that was adjudged imprudent."); *Clark v. Duke Univ.*, No. 1:16-cv-1044, 2018 WL 1801946, at *8 (M.D.N.C. Apr. 13, 2018) ("Since a fund would be removed from the Plan only if its inclusion was found to violate the requirements of ERISA, class members would have no legally recognizable interest in maintaining the removed funds and no conflict exists."). Overall, the defendants fail to show how the plaintiffs' underperforming investments theory creates a fundamental conflict, and the court does not find that it does.

### iii.     The Revenue-Sharing Theory

Finally, the defendants argue that the plaintiffs' theory of excessive recordkeeping fees via revenue-sharing creates conflicts.  They say that the plaintiffs seek a $30 flat fee for recordkeeper services for all participants, which would go against the interests of those class members who currently pay little to no such fees via revenue-sharing for certain investments.  But this misstates that plaintiffs' theory, as well as their requested relief.

The plaintiffs' theory is not necessarily that the same flat fee must be used plan-wide, but that the defendants failed to obtain competitive bids for recordkeeping fees and negotiate the most reasonable rates.  While the plaintiffs do reference a $30 flat fee arrangement as an example result from fee negotiations, they note that a flat fee structure "does not necessarily mean, however, that every participant in the plan must pay the same $30 fee from his or her account," and that a participant could alternatively pay "a proportional asset-based charge."  Compl. at ¶71 [Doc. No. 108].

And the plaintiffs do not seek a particular recordkeeping fee allocation.  The requested relief is to "reform the Plans to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses."  *Id.* at 181.   Whether the ultimate fee structure(s) put in place would harm a given class member

is, at this point, speculative and does not defeat certification. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. at 681.

### 5.  Rule 23(b)(1)

Having satisfied each element of Rule 23(a), the plaintiffs must also establish one of the prerequisites of Rule 23(b).  As noted above, the plaintiffs have chosen to seek certification under Rule 23(b)(1), which permits certification in two scenarios.  First, under Rule 23(b)(1)(A), when separate actions by the individual class members would create a risk of "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  And second, under Rule 23(b)(1)(B), when individual adjudications "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(B).

Courts have certified classes in ERISA breach of fiduciary duty actions similar to this case under either subsection of Rule 23(b)(1), including in the past year.  *See, e.g.*, *Clark*, 2018 WL 1801946, at *9 (certifying class in similar ERISA action after finding it met the requirements of either provision of Rule 23(b)(1)); *Sacerdote*, 2018 WL 840364, at *6 (same).

Consistent with those decisions, the court finds that the proposed class satisfies Rule 23(b)(1).

First, the class meets the requirements of Rule 23(b)(1)(A). The plaintiffs allege that the defendants breached their fiduciary duties based on their management of the Plans. As participants in the Plans, the alleged breach goes to all class members alike. And adjudicating these claims among the some 45,000 participants individually runs the risk of inconsistent results that could place "incompatible standards of conduct" on the defendants. For example, it is possible for one action to result in mandating X procedure for obtaining recordkeepers while another mandates Y, leaving the defendants with conflicting obligations.

Second, the class meets the requirements of Rule 23(b)(1)(B). "In light of the derivative nature of ERISA [Section] 502(a)(2) claims, breach of fiduciary duty claims brought under [Section] 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Suntrust Banks, Inc. ERISA Litig.*, No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)). Indeed, the allegations of the complaint are based on alleged duties and relief owed to the Plans as a whole. Citing the Supreme Court's

27

decision in *Ortiz v. Fibreboard Corporation*, 527 U.S. 815, 833 (1999), the Southern District of New York recently explained why these characteristics lend towards certification under Rule 23(b)(1)(B):

> Rule 23(b)(1)(B) was drafted with an eye toward "situations where lawsuits conducted with individual members of the class would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999) (internal quotation omitted). A classic case of a Rule 23(b)(1)(B) suit includes one with "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.' " *Id.* at 834 (quoting Advisory Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App. at 696). Here, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members . . . [as] the suit involves the [']presence of property which called for . . . management.['] " *Id.* (internal quotation and alteration omitted).

*Sacerdote*, 2018 WL 840364, at *6. In other words, because the fiduciary claims are brought on behalf of the Plans, individual adjudication would necessarily affect—or "be dispositive of the interests of"—plan participants absent from that individual action, or otherwise "would substantially impair or impede their ability to protect their interests" as participants in the Plans. Fed. R. Civ. P. 23(b)(1)(B); *Clark*, 2018 WL 1801946, at *9 (citing

*Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 576–77 (D. Minn. 2014) (certifying ERISA Section 502(a) class action under Rule 23(b)(1)(B))).

The defendants contend that certification under Rule 23(b)(1) is unavailable under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). They argue that because the plaintiffs seek "individualized monetary relief," they are limited to certification under Rule 23(b)(3) only.  Defs' Opp. at 24 [Doc. No. 102] (citing *Dukes*, 564 U.S. at 362).  However, courts have held that portion of the holding in *Dukes* focused on whether certification was available under Rule 23(b)(2) rather than Rule 23(b)(1), including at least one decision in this district.  *See, e.g.*, *In re Suntrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *7 (certifying ERISA class under Rule 23(b)(1) after finding that "the discussion in *Dukes* focused on Rule 23(b)(2), not 23(b)(1)").  The defendants criticize these past decisions, arguing that they ignore the Supreme Court's holding that "individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 564 U.S. at 362.  Regardless of that contention, certification would still be proper under Rule 23(b)(1).  To begin, the plaintiffs do not seek "individualized monetary damages," but recovery for losses to the Plans as a whole.  In addition, *Dukes* does not require certification under Rule 23(b)(3) when monetary damages are incidental to injunctive relief.  *Id.* at 360 (finding certification under Rule 23(b)(2)

improper when the plaintiffs asserted claims for backpay "at least where (as [in *Dukes*]) the monetary relief is not incidental to the injunctive or declaratory relief"). In this case, the monetary relief is incidental to injunctive relief. The plaintiffs seek to correct and prevent the alleged breach of fiduciary duties, and a "[s]urcharge against Defendants and in favor of the Plans all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA." Compl. at 181 [Doc. No. 108]. Therefore, the court finds that the proposed class may be certified under Rule 23(b)(1), and *Dukes* does not require a different result. The plaintiffs' motion for class certification [Doc. No. 77] is due to be GRANTED.

## IV.   Conclusion

Based on the foregoing, the plaintiffs' motion for class certification [Doc. No. 77] is **GRANTED**. The class will be defined as:

> All participants and beneficiaries of the Emory University Retirement Plan and the Emory Healthcare, Inc. Retirement Savings and Matching Plan from August 11, 2010 through the date of judgment, excluding Defendants.

The plaintiffs Geneva Henderson, Rena Guzman, Jacqueline Goldberg, Connie Corpening, Joanne Rackstraw, Joann D. Wright, Deon M. Moore, Cynthia T. James, and Huberta W. Waller are hereby appointed as class

representatives.  The court appoints Schlichter, Bogard & Denton, LLP as class counsel.

Further, pursuant to the court's July 25, 2018 order [Doc. No. 157], the parties are **DIRECTED** to submit a joint status report within fourteen (14) days of the date of this order identifying any remaining discovery disputes, such as those discussed at the July 25, 2018 hearing on the plaintiffs' motion to compel [Doc. No. 145].  The status report should also include new proposed deadlines for expert discovery, as those deadlines are currently suspended.  The court will consider appointing a special master to address any remaining discovery disputes identified in the parties' joint status report.

**SO ORDERED** this 13th day of September, 2018.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge